IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRIAN PITTS, )
       Plaintiff, )
)
  -vs- ) Civil Action No. 16-434
)
CAROLYN W. COLVIN, )
COMMISSIONER OF SOCIAL SECURITY, )
)
       Defendant. )

AMBROSE, Senior District Judge

## OPINION

Pending before the court are Cross-Motions for Summary Judgment. (ECF Nos. 12, 14). Both parties have filed Briefs in Support of their Motions, Defendant has filed a Brief in Opposition to Plaintiff's Motion, and Plaintiff has filed a Reply Brief. (ECF Nos. 13, 15, 16, 17). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am granting Defendant's Motion for Summary Judgment (ECF No. 12) and denying Plaintiff's Motion for Summary Judgment (ECF No. 14).

I. **BACKGROUND**

Plaintiff brought this action for review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income under the Social Security Act. In his application, Plaintiff alleged that he has been disabled since March 15, 2012, due to sarcoidosis, iritis, and deafness in his left ear, which has been treated with a cochlear implant. (ECF No. 8-7, pp. 2, 5). Administrative Law Judge ("ALJ") John Kooser held a hearing on May 21, 2016, at which Plaintiff amended his alleged onset date to March 15, 2013. (ECF No. 8-2, pp. 33-76). On July 8, 2015, the

1

ALJ found that Plaintiff was not disabled under the Act. (ECF No. 8-2, pp. 20-27).

After exhausting all administrative remedies, Plaintiff filed this action. The parties have filed Cross-Motions for Summary Judgment. (ECF Nos. 12, 14). The issues are now ripe for review.

## II. LEGAL ANALYSIS

### A. Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen*, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel*, 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See* 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment that can be expected to result in death or which has

2

lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. § 404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). *Id.*

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984).

### B. Moderate Noise Environment / Use of Telephone

Plaintiff's first contention is that the ALJ erred in assigning "limited weight" to the opinion of the consultative examiner, Dr. Aaron Dewitt. On January 13, 2015, Dr. Dewitt performed an otorhinolaryngology evaluation at the behest of the state agency,

diagnosing Plaintiff with profound sensorineural hearing loss in both ears. (ECF No. 8-9, p. 19). In his Medical Source Statement, Dr. Dewitt checked boxes indicating that Plaintiff "retain[ed] the ability to hear and understand simple oral instructions and communicate simple information[,]" but cannot "use a telephone to communicate[.]" (ECF No. 8-9, p. 25). When asked to elaborate, Dr. Dewitt explained that Plaintiff "can understand direct communication in a quite [sic] room[.]" (*Id.*). Similarly, with regard to environmental limitations, Dr. Dewitt checked the box indicating that Plaintiff could only work in a quiet environment. (ECF No. 8-9, p. 26).

"In evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009) (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)). Moreover, "'[w]hen a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason. The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects.'" *Id.* (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)).

Here, the ALJ considered Dr. Dewitt's opinion that Plaintiff can only work in a quiet environment and cannot use a telephone to communicate. However, he gave it "limited weight," insofar as he concluded that it was "not supported" by the treatment notes from Dr. Douglas Chen, Plaintiff's otolaryngologist at Pittsburgh Ear Associates, which, the ALJ wrote, "reflect[ed] that [Plaintiff] was hearing well with 60% speech discrimination" as of March 2015. (ECF No. 8-2, p. 25). Ultimately, in his RFC, the ALJ limited to Plaintiff to "work in a quiet to moderate noise level environment[,]" with no telephone work, which he defined to mean work in which "telephone communication is

4

not integral to the job." (ECF No. 8-2, pp. 23, 25).

I agree with Plaintiff that the ALJ failed to provide an adequate basis for not adopting Dr. Dewitt's opinion that Plaintiff could only work in a quiet setting. Contrary to what the ALJ concluded, there was simply nothing in Dr. Chen's treatment notes that undermined Dr. Dewitt's opinion as to the noise level Plaintiff could tolerate. To be sure, at their last visit, Plaintiff reported to Dr. Chen that he was "having no problems," that he was "hearing well," and that he "fe[lt] the [cochlear] implant [in his left ear] [was] helping." (ECF No. 8-10, p. 12). But that does not mean that Plaintiff could work in a moderately noisy environment, as the ALJ concluded. Nor does it call into question Dr. Dewitt's opinion that Plaintiff cannot use the telephone to communicate – a limitation that Plaintiff reiterated at the hearing whenever he told the ALJ that he "can't hear on the phone." (ECF No. 8-2, p. 53). Indeed, the ALJ ignored that at the March 2015 office visit, Dr. Chen also discussed implanting a cochlear implant in Plaintiff's right ear because Plaintiff's hearing in that ear had gotten progressively worse. Therefore, substantial evidence does not support the ALJ's decision that Plaintiff can work in a moderate noise environment.

### C. Jobs Identified by the Vocational Expert

At any rate, two of the jobs identified by the vocational expert ("VE"), surveillance-system monitor and election clerk, are performed in a quiet work environment and thus would not be precluded even if Dr. Dewitt's opinion were adopted. The issue, then, is whether it was appropriate for the ALJ to rely on these two jobs – or at least one of them – at Step 5 in finding that work exists in significant numbers in the national economy that Plaintiff can perform. *See* 20 C.F.R. § 404.1566(b) ("Work exists

in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet with [the claimant's] physical or mental abilities and vocational qualifications."). In Plaintiff's view, neither of these jobs was sufficient to satisfy the Commissioner's Step 5 burden.

After careful consideration, I agree with Plaintiff that it was not appropriate for the ALJ to rely on the surveillance-system monitor job. According to the Dictionary of Occupational Titles ("DOT"), a surveillance-system monitor must be able to, *inter alia*, "notif[y] authorities *by telephone* of [the] need for corrective action" and to "*telephone*[] police or other designated agency to notify authorities of [the] location of disruptive activities[.]" DICOT 379.367-010, 1991 WL 673244 (emphasis added). It seems unlikely that this job can be performed by someone like Plaintiff who cannot use the telephone. Nonetheless, the ALJ concluded otherwise, noting that the VE had "testified that phone use is not integral to the performance of the surveillance system monitor [job]." (ECF No. 8-2, p. 26). My review of the record, however, does not reveal any such statement by the VE. Unlike with regard to the election clerk position, the VE was never specifically asked whether use of the telephone was integral to the performance of this job. Rather, he was only asked whether "someone [would] need to be able to at least occasionally use the phone" to perform the job's requirements. (ECF No. 8-2, p. 73). To which he responded (consistent with the DOT's definition), "Yes, I wouldn't use the term occasionally, meaning a third of the workday, but yes." (*Id.*). The VE was then asked, "What if they could never communicate by phone, never, would that cause a problem with that job?" (*Id.*). The VE's response – "[p]robably, yes" – was in direct conflict with the ALJ's ultimate conclusion that Plaintiff could still perform this job. (*Id.*). Thus, in

6

actuality, the VE's testimony failed to support the ALJ's conclusion that telephone use is not integral to this job. On that basis, this job must be excluded from consideration.

That still leaves the election clerk position, though. The VE testified that there are 203,000 such jobs in the national economy, and he reduced his estimate to 100,000 to reflect the need for Plaintiff to avoid contact with the general public.[1] (ECF No. 8-2, p. 70).

According to the DOT, an election clerk

[p]erforms any combination of the following duty *during elections*: Compiles and verifies voter lists from official registration records. Requests identification of voters at polling place. Obtains signatures and records names of voters to prevent voting of unauthorized persons. Distributes ballots to voters and answers questions concerning voting procedure. Counts valid ballots and prepares official reports of election results.

DICOT 205.367-030, 1991 WL 671719 (emphasis added). Relying on the italicized language, Plaintiff argues that "[t]he election clerk job is not an SGA-level job. It is not a full-time job. It is not even a seasonal job. It is a job occurring at or around elections." (ECF No. 17, p. 1). He goes on to claim that "[o]ther federal courts . . . have chided the Commissioner for relying upon the job of an election clerk to deny benefits." (*Id.*).

This argument is not persuasive. First of all, Plaintiff does not cite any binding authority to support his contention that the election clerk job is never performed full-time. Indeed, although the DOT's use of the phrase "during elections" could be read to suggest that the job is only performed during a limited period, the DOT does not actually

---

[1] In support of his opinion that 100,000 jobs would still be available even if interaction with the public were precluded, the VE testified, "The first task in the description says 'compiles and verifies voter list from official registration record,' so the majority of the work is clerical work." (ECF No. 8-2, p. 71). Thus, the VE "restrict[ed] the [203,000] figure by a half to be extremely conservative." *(Id.* at p. 70). Plaintiff has not challenged the VE's estimate, so the Court offers no opinion on whether it was reasonable.

7

include any jobs that are *only* performed part-time or seasonally. *See* National Research Council. *Work, Jobs, and Occupations: A Critical Review of the Dictionary of Occupational Titles* 121, 142 (The National Academies Press 1980). Thus, there must at least be some election clerk positions that are full-time. Common sense supports that conclusion, as does the VE's testimony. For example, many counties have election offices that are staffed year-round, and the work of conducting an election does not begin and end on Election Day. As the VE testified, people who perform this job are not simply poll workers.

More to the point, even assuming that the election clerk position is or can be performed on a part-time (or less than part-time) basis, I find that it was nonetheless not improper for the ALJ to consider such work. At Step 5, the Commissioner has "the burden of showing that [the claimant] is capable of performing other work that exists in significant numbers in the national economy." *Ahmad v. Comm'r of Soc. Sec.*, 531 F. App'x 275, 278 (3d Cir. 2013); 20 C.F.R. § 416.920(g)(1); 20 C.F.R. § 416.966(b). The "other work" must be "substantial" and "gainful." 42 U.S.C. § 423(d)(2)(A). However, courts have held that ALJs are not limited to considering full-time work in making their determinations. *See, e.g.*, *Liskowitz v. Astrue*, 559 F.3d 736, 745 (7th Cir. 2009) (explaining that the regulations do not state "that a VE may permissibly testify only as to the availability of full-time jobs"). Part-time work may also be considered. *See Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 450, n.6 (2d Cir. 2012) ("We decline to create a per se rule prohibiting an ALJ from considering part-time positions."); *Wright v. Colvin*, No. CV 12-1893-SP, 2014 WL 5456044, at *6 (C.D. Cal. Oct. 27, 2014) ("[T]here is no case law stating that the ALJ cannot consider part-time work in the step five analysis.").

Indeed, the regulations make clear that work can be considered "substantial" if it "involves doing significant physical or mental activities . . . *even if it done on a part-time basis*[.]" 20 C.F.R. § 404.1572(a) (emphasis added).

As the Second Circuit Court of Appeals has persuasively explained,

> a VE may . . . testify as to the numbers of jobs that a claimant can perform without specifically identifying the percentage of those jobs that are part-time. The claimant, of course, may respond to the VE's testimony by offering evidence of [his] own that the jobs the VE identified do not constitute 'substantial gainful work' within the meaning of Section 423(d)(2)(A). There may even be circumstances in which a claimant can accomplish this by showing that a substantial percentage of the jobs that the VE has identified are part-time jobs. However . . . [w]here, as here, the VE identifies a significant number of jobs the claimant is capable of performing and this testimony is uncontradicted (and is otherwise proper), it is not error for the ALJ to rely on the VE's testimony.

*Liskowitz*, 559 F.3d at 745.

The lone case on which Plaintiff relies, *Hill v. Colvin*, 807 F.3d 862 (7th Cir. 2016), does not convince me otherwise. For one thing, the court in *Hill* did not hold that the job of election clerk is "effectively a joke for VEs to cite," as Plaintiff so flippantly claims. (ECF No. 15, p. 10). Nor did the court call this job "worthless." (*Id.*). In fact, in the panel's opinion in *Hill*, the court never considered whether the VE's testimony regarding the election clerk job was appropriate because it remanded the case on other grounds. The portion of *Hill* upon which Plaintiff relies actually comes from a concurring opinion by Judge Posner, which did not garner the support of any other members of the panel. *See Hill*, 807 F.3d 869-72 (Posner, J., concurring). And even though Judge Posner's concurrence could be read as suggesting that it is inappropriate for VEs to utilize the election clerk position because it is "occasional rather than full-time employment," *id.* at 872, any such reading would run afoul of the Seventh Circuit's own

9

precedential holding in *Liskowitz*, which says that an ALJ is *not* limited to considering full-time jobs at Step 5.

Here, just as in *Liskowitz*, Plaintiff did not challenge the VE's testimony about the number of election clerk jobs existing in the national economy; nor did he offer any evidence to show that the positions identified by the VE did not amount to "substantial gainful work." Thus, the ALJ did not err in relying on the VE's testimony. Because the VE testified that there are 100,000 such jobs nationwide that can be performed without interaction with the public, the ALJ's decision at Step 5 is supported by substantial evidence and will be affirmed.[2]

An appropriate order shall follow.

---

[2] Although not raised by Plaintiff, I note that the ALJ relied on an out-of-date listing, 2.08, in finding that that Plaintiff was not disabled at Step 3. Effective August 2, 2010, Listing 2.08 was supplanted by Listing 2.10 (Hearing loss not treated with cochlear implantation) and Listing 2.11 (Hearing loss treated with cochlear implantation). Since Plaintiff has a cochlear implant, the ALJ should have considered whether he met the requirements of Listing 2.11. Under Listing 2.11, a person with a cochlear implant is considered disabled "for 1 year after initial implantation." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Thereafter, the person is considered disabled only if he has "a word recognition score of 60 percent or less determined using the [Hearing in Noise Test ("HINT")]." *Id.* At his last office visit with Dr. Chen in March 2015, Plaintiff scored a 79% on the HINT. (ECF No. 8-10, p. 12). Thus, he does meet the requirements of Listing 2.11, and the ALJ's failure to consider the proper listing at Step 3 was harmless.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRIAN PITTS,  )
        Plaintiff,  )
  )
  -vs-  )  Civil Action No. 16-434
  )
CAROLYN W. COLVIN,  )
COMMISSIONER OF SOCIAL SECURITY,  )
  )
        Defendant.  )

AMBROSE, Senior District Judge

## **ORDER OF COURT**

THEREFORE, this 25th day of October, 2016, it is ordered that Defendant's Motion for Summary Judgment (ECF No. 12) is granted and Plaintiff's Motion for Summary Judgment (ECF No. 14) is denied.

                                          BY THE COURT:
                                          s/ Donetta W. Ambrose
                                          Donetta W. Ambrose
                                          United States Senior District Judge